IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARGES DIXON, #A15167, )<br>   )<br>           Plaintiff,    )<br>   )<br>vs.    )    Case No. 3:15-cv-00546-JPG<br>   )<br>KIMBERLY BUTLER,    )<br>SALVADOR A. GODINEZ,    )<br>C/O DAVIS, and    )<br>UNKNOWN PARTY, [1]    )<br>   )<br>           Defendants.   ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Charles Dixon is currently incarcerated at the Menard Correctional Center in Menard, Illinois. (Doc. 1 at 1.) Proceeding *pro se*, Dixon has filed a civil rights action pursuant to 42 U.S.C. § 1983 against Kimberly Butler, the Warden of Menard, Salvador Godinez, the Director of the Illinois Department of Corrections, and a number of other corrections officers and staff at Menard. (*Id.* at 1-4.) Dixon alleges that prison officials and corrections officers were deliberately indifferent to his need for a cell placement on a lower gallery at the prison, that officers were not properly trained to handle gallery placement requests, and that officers retaliated against him by not granting his placement requests due to a previous grievance. (*Id.* at 15-27.) Dixon seeks compensatory and punitive damages. (*Id.* at 27-28.)

This matter is now before the Court for a preliminary review of Dixon's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint

---

[1] Dixon has separated the Unknown Party defendants into three John Doe defendants and referred to them by number throughout his complaint. The Clerk is directed to remove the Unknown Party designation and add John Doe 1, John Doe 2, and John Doe 3 to this case.

Page **1** of **11**

s
s

in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

On April 2, 2014, Dixon was transferred from the Stateville Correctional Facility in Joliet, Illinois, to the Menard Correctional Facility in Menard, Illinois. (Doc. 1 at 8.) When Dixon arrived at Menard, he came with a permit issued by a physician stating that he needed to be assigned to a lower gallery of the prison due to complications from a bilateral hip replacement and the risk of injury to his compromised cervical spine. (*Id.* at 8, 10.) Despite the permit, Dixon was housed at North Two, Cell 524 – in prison parlance, the five gallery. (*Id.* at 8.) He told the cellhouse sergeant of his permit and his need for a lower gallery, but the sergeant said there was "nothing he could do" that day, but that he would leave a note for the sergeant on the following shift to move Dixon to one gallery" on the following day. (*Id.*) Evidently Dixon was not moved as promised, because he filed a grievance with Butler on April 14, 2014, complaining of his continued placement on a higher floor. (*Id.* at 8-9.) Dixon says he received no response, but three days after he filed the grievance, Dixon was moved to Cell 155. (*Id.* at 9.)

Dixon's placement on a lower gallery did not last long – he was transferred from Cell 155 to Cell 355 on May 7, 2014. (*Id.*) Right before he was moved, Dixon told Corrections Officer Davis of his medical permit and his need to be on the first two galleries, but Dixon said "he didn't care" what the permit said and that the matter "wasn't his problem." (*Id.*) Dixon was then moved to Cell 355. (*Id.*) Dixon immediately wrote an emergency grievance to Warden Butler,

notifying her of the risk of housing him in Cell 355 and asking to be moved to a lower gallery. (*Id.* at 9-10.) That grievance was deemed not an emergency and denied. (Doc. 1-1 at 4.)

After his arrival at Cell 355, Dixon had the opportunity to speak with the cellhouse sergeant concerning his medical permit. (Doc. 1 at 10.) The sergeant told Dixon that cell assignment was within the purview of the placement office, that cell transfers "weren't his call," and that Dixon would need to write the office with his concerns "if he wanted to be moved." (*Id.* at 10.) Dixon responded that it was the sergeant's duty to notify the placement office of the danger, and the sergeant told Dixon that he should contact the office himself. (*Id.* at 11.)

On June 3, 2014, Dixon fell while climbing up the stairs to three gallery, sustaining an injury to his forehead when he tried to catch himself on the stair rail. (*Id.*) After the fall, Dixon again wrote an emergency grievance to Butler, asking to be moved to a lower gallery. (*Id.*) Dixon says that grievance was denied and he still was not moved. (*Id.* at 12.) Shortly thereafter, it appears that Dixon was moved back to Stateville Correctional Center, where he remained until at least October 2014. (Doc. 1-1 at 7, 13.) Sometime after October 2014, he was returned to Menard Correctional Center, where he presently resides. (Doc. 1 at 1.)

Dixon filed grievances at the prison and sought review with the Administrative Review Board from April 2014 to January 2015. (*Id.* at 13-14.) In December 2014 and January 2015, the Administrative Review Board denied his grievances. (*Id.* at 14.) Unsatisfied with the prison's response, Dixon filed suit in this Court on May 14, 2015. (*Id.* at 1.)

## **Discussion**

Dixon divides his complaint into eight individual claims linked to his medical needs, but many of these claims are duplicative, making Dixon's effort to subdivide confusing. To facilitate the management of future proceedings, and in accordance with the objectives of Federal

Rules of Civil Procedure 8 and 10, the Court finds it appropriate to re-divide the claims in Dixon's *pro se* complaint into the following counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** Butler, Godinez, Davis, John Doe 1, John Doe 2, and John Doe 3 were deliberately indifferent to Dixon's medical needs concerning placement on a lower gallery, in violation of Dixon's Eighth Amendment rights.
>
> **COUNT 2:** By denying his grievances, Butler and Godinez created a policy, practice, or custom of allowing staff at Menard to disregard Dixon's medical orders, in violation of Dixon's Eighth Amendment rights.
>
> **COUNT 3:** Butler, Godinez, and John Doe 1 failed to provide adequate training and supervision to staff when they allowed staff to disregard Dixon's medical orders, in violation of Dixon's Eighth Amendment rights.
>
> **COUNT 4:** John Doe 1 and John Doe 2 violated Dixon's First Amendment rights by not placing him on a lower gallery in retaliation for a previous grievance.

Dixon's complaint focuses primarily on deliberate indifference to his medical needs, so the Court will start there (**Count 1**). To put forth a viable medical claim, Dixon must allege that prison officials were "deliberately indifferent to his serious medical needs." *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). This claim involves a two-part inquiry: the plaintiff must first show that his condition "was objectively serious," and must then demonstrate that each named defendant acted with a sufficiently culpable state of mind concerning that condition. *Id.*

For screening purposes, Dixon has alleged the existence of an objectively serious medical condition. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable

doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Dixon's need for a lower bunk related to his cervical spine and hip implant issues arguably qualifies as a serious condition, which is sufficient for screening review purposes.

Dixon also needs to allege that each defendant acted with a sufficiently culpable state of mind. To satisfy this requirement, Dixon must allege that each defendant "caused or participated in a constitutional deprivation," and that each defendant's participatory conduct amounted to deliberate indifference to a known condition – as opposed to merely negligent conduct. *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). This is a defendant-by-defendant inquiry, so the Court will evaluate the allegations against each of the six defendants in turn.

Dixon's claim against Warden Butler and Director Godinez relates to their denials of his grievances. In this vein, a high-level official typically cannot be roped into a constitutional claim merely by denying a grievance concerning a "completed act of misconduct." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). However, when a prisoner's communication puts an official on notice of an ongoing constitutional violation, the official might be liable depending on a number of factors, including whether the official had responsibility for correcting the problem, had authority to correct it, or relied on someone else to do it. *See, e.g.*, *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A]n inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition."); *Gentry v. Duckworth*, 65 F.3d 555, 561 (claim that warden "knew of the denial" of rights through repeat letters and "turned a blind eye" could state a claim). Here, Dixon alleges

that Butler and Godinez knew about the ongoing failure to house him on a lower bunk but failed to act, and that is sufficient to put forth a claim at this early phase. *See*, *e.g.*, *Santiago v. Wells*, 599 F.3d 749, 758-59 (7th Cir. 2010) (grievance informing warden that officers were placing the prisoner in cells with dangerous inmates "sufficient, at the pleading stage, to state a claim that [the warden] actually knew or consciously turned a blind eye" towards a risk); *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999) (warden and regional director could be liable by virtue of complaints "directly addressed" to them). So **Count 1** may proceed as to Godinez and Butler.

Dixon also alleges that several officers at the prison were deliberately indifferent to his medical needs. He says that Officer Davis moved him from his gallery one assignment to the gallery three assignment despite knowing that Dixon needed a lower placement, and that John Doe 1 (the placement supervisor), John Doe 2 (a placement officer), and John Doe 3 (the cellhouse sergeant) ordered the move despite knowing of Dixon's medical needs. An official's failure to abide by a physician's instructions despite knowing of those orders can state a claim for deliberate indifference. *See*, *e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (deliberate indifference can exist when guards "intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed"); *Holloway v. Delaware Co. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) ("[O]nce a prison physician prescribes medication, a prison guard should not refuse to give the inmate the medication when he needs it."); *Ralston v. McGovern*, 167 F.3d 1160, 1161 (7th Cir. 1999) (guard's "deliberate refusal" of medication prescribed by doctor could state a claim). As such, Dixon has stated an arguable claim for purposes of screening review, and **Count 1** may proceed as to Davis and John Does 1 through 3.

Dixon next claims that Butler and Godinez created policies that allowed Menard's placement office to disregard medical orders related to Dixon's placement (**Count 2**). His

allegations on this claim are a bit threadbare and confusing, but construed liberally, he seems to allege that Godinez's and Butler's repeat denials of his grievances created a policy by which prison placement staff continued to deny his requests for a transfer. Allegations that an entity's senior officials were personally responsible for creating policies, practices, and customs that caused constitutional deprivations can state a claim. *Doyle v. Camelot Care Ctrs.*, 305 F.3d 603, 615 (7th Cir. 2002). In this vein, the Seventh Circuit has suggested that a prisoner could state a claim by alleging that a high-level official had a policy of "continued denials" of a prisoner's request for certain materials. *See Gentry*, 65 F.3d at 561. While the question is close, Dixon's allegations put forth an arguable claim, so **Count 2** may proceed as to Butler and Godinez.

Dixon goes on to claim that Butler, Godinez, and John Doe 1 (the placement supervisor) failed to provide adequate training to officers concerning placements, and thereby acted with deliberate indifference to Dixon's needs in violation of the Eighth Amendment (**Count 3**). This claim is a non-starter – "failure to train claims are usually maintained against municipalities, not against individuals, and, in the Eighth Amendment context, such claims may only be maintained against a municipality" as an official capacity action. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *see also Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (affirming dismissal of failure to train claims against defendants in their individual capacity, as those claims are not permitted in individual suits). Dixon specifically states, for this claim and others, that the various defendants are being sued "in their individual capacity." (Doc. 1 at 19.) And it would be pointless for him to raise an official capacity failure-to-train claim in this case; Dixon only seeks monetary damages, which are unavailable in official capacity suits against the defendants named here. *See MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 291 (7th Cir. 1993) ("[S]tate officials

may be sued in their official capacities for injunctive relief, although they may not be sued for money damages."). So **Count 3** must be dismissed with prejudice.

Dixon also alleges that John Doe 1 and John Doe 2 retaliated against him for complaining about placement issues, in violation of the First Amendment (**Count 4**). To be sure, prisoners have a First Amendment right to free speech, and restrictions on that right will be upheld only if they were "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). Once more, prison officials may not retaliate against an inmate for exercising his First Amendment rights. *Zimmerman*, 226 F.3d at 573. To put forth a retaliation claim, a prisoner must show that "he engaged in activity protected by the First Amendment," that "he suffered a deprivation that would likely deter First Amendment activity in the future," and that the "First Amendment activity was 'at least a motivating factor in the Defendants' decision to take the retaliatory action.'" *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (*quoting Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). In this case, Dixon alleges that John Doe 1 (the placement supervisor) and John Doe 2 (a placement officer) failed to move him to a lower gallery throughout April and May 2014 because he filed a grievance against them in June 2013. This is sufficient to put forth a claim of retaliation for purposes of preliminary review, so **Count 4** may proceed as to John Doe 1 and John Doe 2.

One closing note concerning John Does 1 through 3: these officers must be identified with particularity before service of the complaint can occur on them. Where a prisoner's complaint states specific allegations describing the conduct of unknown prison officers sufficient to raise a constitutional claim against them, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, guidelines for discovery aimed

at identifying John Does 1 through 3 will be set by the magistrate judge, so that Plaintiff can identify those individuals. While the warden of Menard is already named in this suit in an individual capacity, she will also remain in her official capacity to assist with identifying these individuals. Once John Doe 1, John Doe 2, and John Doe 3 are identified, Dixon shall file a motion to substitute the named individuals with these John Doe designates.

## Disposition

IT IS HEREBY ORDERED that the **CLERK** is **DIRECTED** to **DISMISS** Defendant Unknown Officer from this case. The **CLERK** is **FURTHER DIRECTED** to **ADD** Defendant **John Doe 1**, **John Doe 2**, and **John Doe 3** to the docket sheet.

IT IS FURTHER ORDERED that, for the reasons stated, **COUNT 1** shall **PROCEED** against **BUTLER**, **GODINEZ**, **DAVIS**, **JOHN DOE 1**, **JOHN DOE 2**, and **JOHN DOE 3**.

IT IS FURTHER ORDERED that **COUNT 2** shall proceed against **BUTLER** and **GODINEZ**.

IT IS FURTHER ORDERED that **COUNT 3** is **DISMISSED** with prejudice.

IT IS FURTHER ORDERED that **COUNT 4** shall **PROCEED** against **JOHN DOE 1** and **JOHN DOE 2**.

IT IS FURTHER ORDERED that the Clerk of Court shall prepare for Defendants **BUTLER**, **GODINEZ**, and **DAVIS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will

require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the John Doe defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. It is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 10, 2015**

*s/J. Phil Gilbert*
**Judge J. Phil Gilbert**
**United States District Judge**